IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| DEBORAH ELLIS AND<br>LANDSCAPES IN LEARNING, INC.<br>D/B/A THE LEARNING TREE | PLAINTIFF |
| v. | No. 4:04CV287 |
| MISSISSIPPI STATE DEPARTMENT OF HEALTH;<br>MISSISSIPPI STATE BOARD OF HEALTH; DR. F.E.<br>THOMPSON, JR.; FESTUS SIMKINS; INGRID<br>DAVE-WILLIAMS; DIANE HERRING; THERESA<br>PATTON; CYNTHIA LESURE; DOROTHY GASTON;<br>AND RICKY BOGGIN | DEFENDANTS |

CONSOLIDATED WITH

| | |
|---|---|
| DEBORAH ELLIS and CHILD CARE SYSTEMS<br>d/b/a SUSIE M. BROOKS CHILD CARE FACILITY and<br>d/b/a THE LEARNING TREE | PLAINTIFFS |
| V. | CASE NO. 4:06CV004 |
| TERESA PATTON and TINA MOORE | DEFENDANTS |

**ORDER**

This cause comes before the court on the motion of defendants to dismiss, pursuant to Fed. R. Civ. P. 12. Plaintiff has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

Plaintiff Deborah Ellis brought this action on behalf of her child care center Landscapes in Learning, Inc. d/b/a The Learning Tree (hereinafter, "TLT"), alleging that the Mississippi State Department of Health ("MSDH"), acting through various employees named as defendant herein,

committed Constitutional violations in the course of certifying the number of children that TLT could legally serve. Ellis founded TLT in 1986, and she was initially authorized by the MSDH to serve 63 children at the facility, based upon the then-existing standard of 35 feet of "indoor floor space" per child. Subsequently, TLT's license was renewed annually through 1997 with the same maximum capacity of 63 children.

On January 8, 1997, the MSDH adopted a general space requirement that excluded spaces previously allowed as "usable space" for the purposes of determining the maximum allowable enrollment at a child care facility. That same year, Ellis attended an MSDH-sponsored training session at which she realized that the maximum enrollment of her day care center might well be reduced if the new regulations were applied to her business. Concerned, Ellis contacted her state senator regarding her concerns that the MSDH had undue discretion in deciding which day care centers would be re-measured and which would not. Ellis alleges that she received verbal assurances from a Mississippi Board of Health member that businesses existing prior to 1997 would not be re-measured using the new regulations and would maintain their pre-existing enrollment capacity.[1]

On June 2, 1999, two MSDH licensing officials, Theresa Patton and Cynthia Lesure, performed the agency's annual inspection of TLT. While she initially believed that TLT's license had been renewed following the inspection, plaintiff discovered on June 30, 1999 that TLT's operating license had actually expired. Upon investigating, Ellis discovered that, according to Festus Simkins, the MSDH's Director of Licensing and Regulation, TLT's original 1986 facility survey could not be located in the MSDH's central office file, and the facility was therefore measured again for this reason. Subsequently, however, District III Health Officer, Edward Course informed Ellis that the 1986

---

[1] The complaint appears to concede, however, that there were no formal regulations which served to grandfather-in the existing day care facilities.

measurements were actually on file with the local county health department. Ellis, in turn, relayed this information to relevant MSDH officials, who informed her that TLT's license would be renewed according to the 1986 inspection record. Approximately one week later, Ellis received a renewed license, but at a maximum capacity of 62 children instead of the 63 limit which had applied since the TLT's founding.

Dissatisfied with the reduction of the maximum child capacity for TLT, Ellis contacted the original inspectors and discovered that the maximum capacity of 62 children was based on the 1986 measurements. After a series of phone calls to various public officials, Ellis requested and received a hearing to obtain clarification regarding the regulations under which TLT was to be measured. At the April 12, 2000 hearing, Ellis presented her argument regarding the use of the 1997 regulations to measure TLT. Subsequently, Dave Williams, director of licensure for the Mississippi State Department of Health, contacted Ellis and advised that TLT's maximum capacity would be significantly reduced further, to 51. After a myriad of correspondence between Ellis and Williams regarding TLT's maximum capacity and a subsequent measurement of TLT by two different inspectors, TLT's maximum capacity was determined to be 52. These reductions were apparently based upon the application of the 1997 regulations to TLT.

Aggrieved by the reduction of TLT's maximum capacity and the use of the 1997 regulations, Ellis filed a lawsuit in chancery court, and the court, by agreed order, ordered the MSDH to conduct a new hearing concerning the licensed capacity of the child care facility. Following such hearing, the hearing officer determined that the "re-measurement of TL[T] was reasonable, not arbitrary or capricious" and the State Health Officer affirmed this conclusion. Ellis appealed the Health Officer's decision to chancery court, but this appeal was dismissed without prejudice for failure to prosecute.

3

Ellis now files suit in federal court pursuant to § 1983.

## **ANALYSIS**

Accepting the allegations in plaintiff's complaint as true, it is not difficult to understand why plaintiff should feel considerable frustration over the fact that, since its founding in 1986, her day care center, which has not varied in physical size, has been authorized by the MSDH to serve a widely varying number of children. It may well be true that the MSDH's handling of this case leaves a great deal to be desired, and the court can understand plaintiff's concern that the MSDH licensing scheme grants unduly wide discretion to MSDH personnel in deciding which day care centers are to be inspected. Nevertheless, plaintiff's attempts to hold employees of the MSDH individually liable for monetary damages based upon the events in this case is a legal non-starter. The court would initially note that, as a matter of public policy, imposing individual liability against governmental workers under facts similar to those herein would prove unworkable. In the court's view, this case represents a fairly garden-variety case in which an individual alleges that she and her business have been regulated in an arbitrary manner by a state agency.

While the court does not minimize the inconvenience and expense which plaintiff has experienced in this case, the fact remains that state employees must, as a matter of public policy, be permitted to perform their work duties without undue fear of litigation. The Mississippi legislature has recognized this fact by shielding state employees from individual liability under state law for acts committed in the course and scope of their employment, *see* Miss. Code Ann. § 11-46-7, and similar public policy considerations are advanced by federal immunity doctrines, as discussed *infra*. It is also true that the decisions of the MSDH are subject to an appeal process of which plaintiff partially availed herself, prior to having her appeal dismissed in Chancery Court for her own failure to prosecute.

Accordingly, plaintiff's argument that she must resort to a federal damages lawsuit against individual members of the MSDH to protect herself from that agency's allegedly arbitrary actions is plainly without merit. With the foregoing in mind, the court now turns to the specifics of its legal analysis of the motion to dismiss.

In opposing dismissal of her damages claims, plaintiff initially concedes, as she must, that the Eleventh Amendment to the United States Constitution prohibits her from recovering monetary damages against the MSDH in federal court. The Eleventh Amendment likewise precludes recovery of damages against MSDH employees in their official capacities. Nevertheless, plaintiff attempts to circumvent the Eleventh Amendment by seeking monetary recovery against MSDH employees in their individual capacities. In the court's view, however, plaintiff's complaint does not properly allege misconduct which would support individual recovery against these employees. While plaintiff does list the roles that various employees played in the MSDH's licensing process, the court views the licensing decisions in this case as decisions of the MSDH as a whole. Naturally, the MSDH must act through individual employees, and it may well be the case that the competence level of some of these employees is less than stellar. Nevertheless, this fact does not entitle plaintiff to pursue claims against these employees individually for Constitutional violations.

Even if the court is to assume that the complaint properly alleges violations of the U.S. Constitution and/or federal law against individual employees for § 1983 purposes, the court would still conclude, for essentially the reasons stated in defendants' brief, that absolute and/or qualified immunity applies in this case. The Supreme Court has recognized two kinds of immunity under § 1983: "qualified immunity" and "absolute immunity." Pursuant to "qualified immunity," government officials are not subject to liability for the performance of their discretionary actions unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*

*v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "Absolute immunity," by contrast, denies a person whose federal rights have been violated by a government official any type of remedy, regardless of the conduct.

This court concludes that MSDH officers Thompson, Simkins, Dave-Williams, Herring, Patton, Lesure, Gaston and Boggin are entitled to absolute immunity because they were acting in a quasi-judicial capacity when they either inspected, measured or renewed TLT's license at a reduced child capacity maximum using the amended licensure regulations. The Supreme Court has held that "quasi-judicial" agency officials who, irrespective of their title, perform functions essentially similar to those of judges or prosecutors, in a setting similar to that of a court are entitled to absolute immunity. In *Butz v. Economou*, 438 U.S. 478, 511-17, 98 S.Ct. 2894, 2913-16, 57 L.Ed.2d 895 (1978), the U.S. Supreme Court established the following factors which are characteristic of the judicial process and are variables to be considered in determining absolute as contrasted with qualified immunity:

> 1. the need to assure that the individual can perform his functions without harassment or intimidation;
> 2. the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;
> 3. insulation from political influence;
> 4. the importance of precedent;
> 5. the adversary nature of the process; and
> 6. the correctability of error on appeal.

*Butz*, 438 U.S. at 512, 98 S.Ct. at 2913-14).

The court agrees with defendant that, with the exception of the fourth factor regarding the importance of precedent, the *Butz* factors strongly support a conclusion that the functions of the MSDH officers were quasi-judicial in nature. In so concluding, the court places particular emphasis upon the fact that the MSDH's assessments were subject to a judicial appeal process of which, to reiterate, plaintiff only partially availed herself prior to having her appeal dismissed for failure to prosecute. In

the court's view, the existence of actual judicial review of the MSDH's assessments serves to provide safeguards controlling unconstitutional conduct, tends to reduce the impact of political influence in the decision-making process, ensures the availability of adversarial judicial processes, and ensures the correctability of any errors on appeal. The court judges these factors to be significant ones, along with the additional factors raised in defendant's brief.

The court also finds persuasive the Fifth Circuit's decision in *O'Neal v. Mississippi Bd. Of Nursing*, 113 F.3d 62, 67 (5th Cir. 1997), wherein that court held that officers of the Mississippi Board of Nursing enjoyed absolute quasi-judicial immunity, under circumstances similar to those herein. In *O'Neal*, plaintiffs brought a § 1983 action against the Mississippi State Board of Nursing, its executive director, and the board members in their official and individual capacities, for allegedly violating their Fourteenth Amendment Due Process rights when their license to practice nursing was revoked following adjudicatory hearings. *O'Neal*, 113 F.3d at 62-63. The Fifth Circuit found the *Butz* factors to be met in that case, in spite of the fact that, as in this case, the fourth factor regarding the importance of precedent was not met. While the court does not feel it necessary to recite the Fifth Circuit's analysis in *O'Neal* in its entirety, the court would note that the Fifth Circuit's observations regarding the Mississippi Board of Nursing apply equally to the MSDH. Indeed, as in *Butz*, the extent to which the MSDH relies on precedent is not clear herein, but, regardless, the Fifth Circuit concluded in *Butz* that "this one factor is not controlling and is greatly overshadowed by the convincing nature of the five other variables." *Id.* at 66. The court accordingly concludes that the MSDH officers in this case enjoy absolute quasi-judicial immunity.

Even assuming, *arguendo*, that the MSDH's acts in inspecting and measuring plaintiff's property constitute investigatory rather than quasi-judicial functions, the court would nevertheless conclude that any defendants, in particular Theresa Patton and Cynthia Lesure, who performed these

7

acts are entitled to qualified immunity. "Government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates 'no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "If so, the court decides whether the defendant's conduct was objectively reasonable." *Beck*, 204 F.3d at 638.

In their brief, defendants argue that:

> Patton's and Lesure's conduct did not violate clearly established constitutional or statutory rights. By the Plaintiffs' own admission, Patton and Lesure were conducting an annual inspection of the child care facility pursuant to the Mississippi State Board of Health's regulations. Administrative or regulatory searches are well known exceptions to warrant requirements. See *New York v. Burger*, 482 U.S. 691 (1987). Warrantless searches are constitutional only "[i]f there is a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made, (2) if warrantless inspections are necessary to further the regulatory scheme, and (3) if the inspection program provides a constitutionally adequate substitute for a warrant, in terms of certainty and regularity of its applications." *Id.* The inspection and measuring a child care facility for the purposes of annual renewal of child care licensure serves a substantial state interest in protecting and promoting the health and safety of children in attendance and does not give rise to a § 1983 claim or violate any constitutional or statutory rights. Moreover, the inspection was conducted pursuant to an existing regulatory scheme. By Plaintiffs' own admission, section 1, subsection 1-1D of the Mississippi State Department of Health regulations makes child care facilities subject to "remeasure[ment] and reinspect[ion] at any time at the discretion of the licensing agency."

The court agrees with defendants and concludes that there has been no violation of a clearly established constitutional right in regard to the inspection of plaintiff's child care facility.

In addition to the foregoing, the court would also take the opportunity to voice its concerns that plaintiff may be improperly seeking to revive in federal court rights which she allowed to lapse in state court. As noted previously, plaintiff acknowledges in her complaint that, on July 31, 2000, she filed suit in Leflore County Chancery Court and obtained an order requiring a hearing regarding the licensed capacity of TLT. According to the complaint, the administrative hearing was held before the MSDH

8

on May 23, 2001, and the hearing officer issued findings of fact concluding that the re-measurement of TLT "was reasonable, not arbitrary or capricious, and that the re-measurements indicate the facility has a licensed capacity of 52 children." On September 19, 2001, the State Health Officer, Dr. F.E. Thompson, Jr. adopted and concurred with the conclusions of the hearing officer. On October 22, 2001, Ellis appealed Dr. Thompson's decision to the Leflore County Chancery Court, but the complaint concedes that "on December 3, 2002, the appeal of Dr. Thompson's decision was dismissed without prejudice on motion of the Chancery Clerk for failure to prosecute by Ellis' former attorney."

In light of the foregoing, it appears to this court that plaintiff is attempting to assert Constitutional claims in federal court regarding actions of the MSDH which have already been found to be neither arbitrary nor capricious in state court litigation. Plaintiff had appellate remedies available to her in this state court litigation, but she chose not to pursue them. While she appears to assign blame in this regard to her "former attorney," plaintiff is clearly bound by her failure to appeal the Health Officer's ruling. Plaintiff now seeks to be allowed to pursue remedies under federal law for the same allegations of arbitrariness which have been rejected in state court, but such would, in this court's view, be improper. This constitutes yet another reason why, in the court's view, plaintiff's claims for monetary damages arising out of the MSDH's assessment of the licensed capacity of her day care facility should be dismissed.[2]

---

[2]Given that there exist other bases for dismissal, the court need not establish precisely which doctrine of claim or issue preclusion (e.g. *res judicata* or collateral estoppel) serves to bar plaintiff's damages claims herein. While its decision today applies only to plaintiff's damages claims, this court would note that it seems doubtful that plaintiff has any valid claims for injunctive relief with regard to the licensed capacity issue either. Barring truly compelling arguments to the contrary, this court will be very hesitant to award any injunctive relief which would be inconsistent with the Health Officer's finding that the proper licensed capacity of TLT is 52 children or that the MSDH did not act arbitrarily or capriciously in this case. Plaintiff failed to prosecute her appeal of these findings, and she should not, in the court's view, be permitted to

In light of the foregoing, it is ordered that defendant's motion to dismiss [5-1] is granted as to any claims asserted in plaintiff's 2004 complaint seeking monetary damages against any defendant.[3] Plaintiff's unopposed motion to substitute parties [17-1] is granted.

SO ORDERED this the 3rd day of August, 2006.


     /s/ Michael P. Mills
     **UNITED STATES DISTRICT JUDGE**

---

revive these claims with a federal lawsuit.

[3]The court would note that plaintiff filed a separate complaint [4:06cv4] seeking injunctive relief in relation to inspections carried out by the MSDH in relation to allegations of child abuse which are separate from the licensed capacity issues in the 2004 action. The two complaints filed by plaintiff have been consolidated, but the allegations in the more recent complaint are not addressed in this order.